OPINION
Defendant-appellant Morris Brown appeals his convictions and sentences entered by the Stark County Court of Common Pleas on one count of rape and one count of sexual battery. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On February 24, 1999, the Stark County Grand Jury indicted appellant on one count of rape, in violation of R.C. 2907.02, an aggravated felony of the first degree; and one count of sexual battery, in violation of R.C. 2907.03, a felony of the third degree. With respect to the rape charge, the indictment alleged appellant, as a continuous course of conduct from on or about February 1, 1992, until January 31, 1994, engaged in sexual conduct with Danielle Hood, who is not his spouse and who was less than thirteen years old. The sexual battery count alleged appellant, as a continuous course of conduct from on or about February 1, 1992, until June 5, 1995, engaged in sexual conduct with Danielle Hood, and appellant being the stepfather of Danielle. On June 7, 1999, the trial court issued a warrant for removal, ordering the Stark County Sheriff to proceed to the Chillicothe Correctional Institution and to return appellant to Stark County for arraignment. At his arraignment on June 18, 1999, appellant entered a plea of not guilty to the charges. The trial court appointed Attorney Jean Madden of the Stark County Public Defender's Office to represent appellant. The matter proceeded to trial on August 25, 1999. At trial, Danielle Hood, the victim, testified appellant and Patricia Hood, her mother, were married on April 5, 1993. The first incident during which appellant inappropriately touched Danielle occurred shortly after appellant moved into the residence which Danielle shared with her mother and siblings. Danielle stated she was up late one evening watching television with her mother and appellant. Both adults had been drinking. Patricia eventually fell asleep. Thereafter, appellant touched Danielle's breasts, and reached down her pants and touched her with his fingers. Danielle recalled this incident occurred approximately one month after appellant and her mother were married. Danielle further testified the first occasion in which appellant engaged in sexual intercourse with her happened approximately one month later, and noted this incident occurred prior to her thirteenth birthday on February 1, 1994. She stated appellant thereafter engaged in sexual intercourse with her "[a]ny chance he got," including after she turned thirteen years old. On September 9, 1994, Danielle gave birth to a baby boy, Mark, who was born four weeks premature. Danielle testified appellant was the only person with whom she had had sexual intercourse prior to her becoming pregnant. Sometime after Mark's birth, appellant, Patricia, and the family moved to Cincinnati, Ohio. During an argument one day in 1996, appellant told Patricia not only had he touched Danielle, but also he had fathered her child. After Patricia telephoned the police, Danielle told her the truth about what had happened. However, when Danielle spoke to Detective Stricker of the Cincinnati Police Department, she told the officer nothing had happened between her and appellant. During her direct examination, Danielle stated she lied to the detective because she did not want to hurt her mother. Danielle testified she later admitted to her mother and to the police she had lied to Detective Stricker. Patricia Hood also testified for the State. Patricia recalled when she married appellant, Danielle was twelve years old and Danielle's son was born the year following the marriage. Patricia testified appellant admitted to sexually molesting Danielle and fathering her child after Patricia informed him she was seeking a divorce. Detective Stricker testified he initially investigated allegations against appellant regarding sexual misconduct with Danielle in July, 1996, after he received a complaint from the Hamilton County Department of Human Services. The detective noted he closed this initial investigation as "unfounded" because, during the interview, the victim, Danielle, informed him the allegations did not occur. Although the allegations were brought to the attention of the Cincinnati Police Department a second time, the case was not reopened due to a lack of information. After the Hamilton County Department of Human Services received the results of DNA tests, the case was reopened. Detective Stricker spoke with appellant in February, 1998. Appellant was given Miranda warnings at this time. On cross-examination, Detective Stricker noted, during their conversation, appellant neither denied fathering Danielle's son nor denied having sexual intercourse with Danielle. Appellant told the detective he remembered having sexual intercourse with Danielle on her birthday (February 1, 1994), or the day after the year in which Mark was born. Upon conclusion of Detective Stricker's testimony, the parties stipulated the DNA results established appellant as the father of Mark. Thereafter, Dr. Cheryl Conley testified she is employed with GeneScreen in Dayton, Ohio. After reviewing the DNA testing, Dr. Conley could not exclude appellant as the biological father of Mark. Dr. Conley further testified the combined paternity index established appellant was 1132 times more likely to be the biological father of the child than a randomly tested black man. After hearing all the evidence and deliberations, the jury found appellant guilty of one count of rape and one count of sexual battery as charged in the indictment. The trial court scheduled a sentencing hearing and an H.B. 180 hearing for September 2, 1999. Based upon the evidence presented at the trial and in light of the factors set forth in R.C. 2950.09(B), the trial court adjudicated appellant to be a sexual predator. The trial court sentenced appellant to the maximum term of imprisonment of 10 to 25 years on the rape count, and a maximum sentence of 2 years on the sexual battery count. The trial court ordered the sentences be served concurrently to each other, but run consecutively with the prison term imposed by the Hamilton County Court of Common Pleas. The trial court memorialized the jury's verdicts and sentences via Judgment Entry dated September 7, 1999. It is from these convictions and sentences appellant prosecutes this appeal, raising the following assignments of error:
 I. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBTAIN AN EXPERT WITNESS TO REBUT EVIDENCE THAT THE CONCEPTION DATE OF THE VICTIM'S CHILD WAS BEFORE FEBRUARY 1, 1994, THE VICTIM'S 13TH BIRTHDAY.
 II. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO SUBPOENA THE MEDICAL RECORDS OF THE VICTIM AND HER CHILD IN ORDER TO DETERMINE THE CONCEPTION DATE OF THE CHILD IN QUESTION.
 III. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS THE STATEMENTS MADE BY THE DEFENDANT TO DETECTIVE BRIAN STRICKER OF THE CINCINNATI POLICE DEPARTMENT.
 IV. DEFENDANT'S CONVICTION OF ONE COUNT OF RAPE, AN AGGRAVATED FELONY OF THE 1ST DEGREE, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 I, II, III
Because appellant's first, second, and third assignments of error all raise ineffective assistance of counsel claims, we shall address said assignments together. Appellant sets forth three grounds upon which he predicates his claims. First, appellant maintains trial counsel was ineffective for failing to obtain an expert witness to rebut the State's evidence appellant and Danielle's child was conceived before February 1, 1994, Danielle's thirteenth birthday. Next, appellant asserts he was denied effective assistance trial counsel as a result of trial counsel's failure to subpoena the medical records of Danielle and her child in order to determine the conception date. Finally, appellant submits trial counsel was ineffective for failing to file a motion to suppress the statements appellant made to Cincinnati Police Detective Brian Stricker. The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136. Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland at 689, 104 S.Ct. At 2065,80 L.Ed.2d at 694-695; State v. Wickline (1990), 50 Ohio St.3d 114,126. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of a trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993),506 U.S. 364, 113 S.Ct. 838, 842-843, 122 L.Ed.2d 180, 189-191. This standard is set forth in State v. Carter (1995), 72 Ohio St.3d 545,557-558. With respect to trial counsel's failure to present evidence, either through an expert witness or through medical records, to rebut the State's evidence of the conception date of Danielle's child, we direct our attention to the second prong of the Strickland test. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, surpa. at 697. The record before this Court is devoid of anything which indicates what an expert would have testified to or what the medical records would have shown regarding the conception date of appellant and Danielle's child. Accordingly, appellant's assertion the outcome of his trial would have been different is purely speculative. Furthermore, in light of the victim's testimony appellant began having sexual intercourse with her in 1993, before her thirteenth birthday, and appellant's confession to Detective Stricker, in which he admits to having sexual intercourse with Danielle on two occasions, once prior to her thirteenth birthday and once after, we find appellant cannot establish he was prejudiced as a result of the alleged deficiency of trial counsel. Turning to appellant's claim relative to trial counsel's failure to file a motion to suppress, we find such failure does not warrant a reversal on the basis of ineffective assistance. A criminal conviction will not be reversed on the ground of ineffective assistance of counsel solely because defense counsel failed to file a timely motion to suppress evidence, where the record does not demonstrate that the evidence was illegally obtained. State v. Blagajevic (1985), 21 Ohio App.3d 297,299-300, 488 N.E.2d 495 (Citation omitted).
"Where the record is not clear or lacks sufficient evidence to determine whether a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established." State v. Parkinson (May 20, 1996), Stark App. No. 1995 CA00298, unreported. Detective Stricker testified appellant signed a written waiver of his Miranda Rights prior to the commencement of the police interview. Upon review of the entire record, we find nothing therein to demonstrate Detective Stricker illegally obtained appellant's confession or to establish a motion to suppress would have been successful. Based upon the foregoing, appellant's first, second, and third assignments of error are overruled.
 IV
In his final assignment of error, appellant raises an insufficiency of the evidence claim with respect to the rape count. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. In the instant action, appellant was charged with rape, in violation of R.C. 2907.02(A)(1)(b), which provides:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Appellant argues the State's failure to introduce expert testimony to establish the date of conception of Danielle's son, instead relying upon the testimony of Danielle and her mother the child was born at least four weeks premature, was insufficient to establish appellant knowingly engaged in sexual conduct with Danielle while she was under the age of thirteen. Appellant admitted to Detective Stricker he had sexual intercourse with Danielle on at least one occasion prior to her thirteenth birthday. Furthermore, the evidence revealed Danielle gave birth to a son, fathered by appellant, on September 9, 1994. Considering the nine months gestation of a human baby, the evidence indicates Mark, who was born four weeks early, was conceived prior to February 1, 1994. Additionally, Danielle testified appellant engaged in sexual intercourse with her in June, 1993, approximately eight months prior to her thirteenth birthday. Based upon the foregoing, we find the record provides sufficient evidence to support appellant's conviction for rape. Appellant's fourth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
 _______________________ HOFFMAN, P.J.
EDWARDS, J. and MILLIGAN, V.J. concur.